UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BROSNAN, | No. C-08-0694 JCS |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| TRADELINE SOLUTIONS, INC., ET AL., | **[Docket No. 109]** |
| Defendants. | |

## I. INTRODUCTION

Before the Court is a motion for summary judgment filed by Defendant Ted Stearns (hereafter "Defendant"). The parties have consented to the jurisdiction of this Court. A hearing was held on January 15, 2010. As explained in greater detail below, the motion for summary judgment is GRANTED.

## II. BACKGROUND

Plaintiff John Brosnan ("Plaintiff") filed this action on January 30, 2008, alleging that Defendants engaged in unfair business practices in connection with the sale of "tradelines." Plaintiff filed an amended complaint on August 15, 2008, asserting a claim under the Lanham Act, 15 U.S.C. § 1125(a), as well as claims under state law. On September 12, 2008, Defendants filed a Motion to Dismiss and a Motion to Strike. In the Motion to Dismiss, Defendants asserted that all of Plaintiff's claims in the First Amended Complaint are defective and should be dismissed. Plaintiff filed no opposition to either motion. The Court granted the Motion to Dismiss and the Motion to Strike and dismissed Plaintiff's Complaint with leave to amend to address the defects cited in Defendants' Motions.

On November 17, 2008, Plaintiff filed a Second Amended Complaint. On December 1, 2008, Defendants filed a Motion to Dismiss the Complaint and a Motion to Strike Portions of Plaintiff's Second Amended Complaint. Plaintiff again, filed no opposition to Defendants' motions. On February 13, 2009, the Court held a hearing, at which Plaintiff and counsel for Defendant appeared by telephone. On February 13, 2009, the Court dismissed Plaintiff's Second Amended Complaint with leave to amend, and denied Defendants' Motion to Strike.

On February 27, 2009, Plaintiff Brosnan filed a Third Amended Complaint. On March 19, 2009, Defendants filed a Motion to Dismiss the Third Amended Complaint. Plaintiff filed an opposition on May 13, 2009. A hearing was held on May 22, 2009, after which the Court granted the motion to dismiss and provided Plaintiff one final opportunity to amend his Complaint. Thereafter, Plaintiff filed a Fourth Amended Complaint, which contains four claims: 1) a federal Lanham Act false advertising claim under 15 U.S.C. §1125(a)(1)(B); 2) fraud; 3) violation of California Business and Professions Code § 17200; and 4) a violation of California Business and Professions Code § 17500. Defendant Ted Stearns has filed the present motion for summary judgment, or alternatively, for summary adjudication. In opposition, Plaintiff presents no evidence or facts in support of his arguments; rather, he argues that his evidence was destroyed by the alleged actions of counsel for Defendant Stearns at the deposition of Plaintiff on September 14, 2009. The Court construes Plaintiff's opposition as a motion for spoliation of evidence and will address both the Defendant's summary judgment motion and Plaintiff's spoliation motion below.

**II. DISCUSSION**

    **A. The Claims in the Fourth Amended Complaint**

Plaintiff has brought this action against Defendants Tradeline Solutions Inc, Tradelinesolutions.com, and Ted Stearns, and "Does 1-99."[1] According to the Complaint, Plaintiff

---

[1] The DOE Defendants are hereby dismissed. Unlike California state courts, federal courts do not allow the use of DOE defendants without leave of court and it is within the discretion of the court to decide whether to allow amendment to substitute names for DOE Defendants where Plaintiff did not seek leave to amend in order to do so. *See Brass v. County of Los Angeles,* 328 F.3d 1192 (9th Cir. 2003). The DOE Defendants are therefore dismissed.

2

"works with people who have low credit scores and assist[s] them in purchasing real estate. This is accomplished by helping them improve their credit scores through legitimate means such as negotiating with reporters of derogatory credit, negotiating deals with lenders and working to clear their credit history [sic] of erroneous data among other means." Fourth Amended Compl. at ¶10.

Defendant allegedly operates a competing business by selling what are known as "tradelines." *Id.* at ¶11. The typical "tradeline" sold by Defendant consists of "an aged assumable note that has a payment history." *Id.* Defendant "operate[s] illegally by duping unsuspecting victims into believing that it's legal to purchase a seasoned tradeline and its' associated history and then represent to a credit granter, such as a bank, that the history of good payment history is theirs." *Id.* at ¶12. Plaintiff alleges that Defendants instruct their customers not to inform credit grantors that the tradelines were recently purchased for the purpose of increasing their credit scores. *Id.* at ¶13. Plaintiff further alleges that Defendants instruct their customers to lie to credit grantors by telling them that the "TRADELINES on their credit history are theirs." *Id.* at ¶21.

There are four claims in the Fourth Amended Complaint, all of which involve Defendant Ted Stearns' business of selling "tradelines." The first claim alleges violations of the Lanham Act, 15 U.S.C. § 1125(a). Claim two alleges fraud. In the third and fourth claims, Plaintiff alleges violations of the California Business and Professions Code, §§ 17200 and 17500, respectively. Finally, Plaintiff seeks injunctive relief, disgorgement of profits "estimated to be greater than $100,000.00", and an "award increased and treble damages for willful conduct pursuant to 15 U.S.C. § 1117(a)(3)" (Compl. at p.15), restitution, attorneys' fees and costs.

**B.     Undisputed Facts**

Defendant has filed a statement of "Admitted Facts" pursuant to Federal Rule of Civil Procedure 36(b). Many of these facts were contained in a request for admissions that was propounded on Plaintiff during the discovery process. Plaintiff failed to respond to Defendant's discovery requests, despite repeated requests and reminders of Plaintiff's discovery obligations. As set forth in greater detail in the declaration of Timothy Stearns, Plaintiff was reminded on numerous

occasions about his discovery obligations, and failed to bring the responses to the scheduled deposition of Plaintiff as promised. *See* Declaration of Timothy Stearns filed in Support of Defendant's Motion for Summary Judgment, ¶¶ 10-21. Plaintiff repeatedly informed counsel for the Defendant that his responses would be forthcoming. *Id*. Plaintiff did not respond or otherwise object to Defendant's requests for admissions. By failing to respond to Defendant's Requests for Admissions, the answers to those requests are deemed admitted. Under Federal Rule of Civil Procedure 36(a)(3), "[a] matter is admitted unless, within thirty days after being served, the party to whom the request is directed serves a written answer or objection. . . ." Defendant is not required to file a motion to establish the admissions because Rule 36 is "self-executing." *Cook v. Allstate Ins. Co.*, 337 F.Supp.2d 1206, 1209-11 (C.D. Cal. 2004). A matter admitted pursuant to Rule 36 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R.Civ.P. 36(b). A court may allow withdrawal or amendment when: 1) the presentation of the merits of the action will be served; and 2) the party who obtained the admission will not be prejudiced by the withdrawal. *Cook, supra* at 1210, citing, *Sonoda v. Cabrera*, 255 F.3d 1035, 1038 (9th Cir. 2001). The Court finds no circumstances here that would warrant amendment or withdrawal. Plaintiff has therefore admitted facts that this Court may consider for purposes of deciding the present motion for summary judgment.

In the present case, the facts set forth below are not disputed, based upon: 1) the unrefuted declaration of Defendant Ted Stearns; 2) the deposition testimony of Plaintiff Brosnan; and 3) other facts set forth in Defendant's requests for admissions (hereafter "Admitted Facts"), which this Court finds have been conclusively admitted by Plaintiff.

Defendants Tradeline Solutions and Ted Stearns offered a form of credit piggybacking known as "tradelines." Reporter's Transcript ("RT") at 194. Plaintiff Brosnan did not offer this product to his customers. RT 194, 297-298. In December 2007, Defendant Tradeline Solutions announced that it was offering a new product, known as "seasoned primary accounts." Stearns Decl., ¶ 3. Plaintiff did not offer seasoned primary accounts to anyone. RT 148, 297.

4

Plaintiff claims that he had a business known as "Apex Credit Repair Co." RT 63, 15-19. He testified at his deposition that he had seven unnamed customers for whom he provided foreclosure consulting and that he lost them to Defendant's unfair competition. RT 293:5-17. Plaintiff intended to stop or postpone the foreclosure sale for the seven unnamed customers he claims to have lost to Defendant's business. RT 291.

Other than Plaintiff's testimony regarding these unnamed customers, there is no evidence of their existence. At his deposition, Plaintiff was unable to identify any customers' names, and unable to identify anyone who would know of the existence of Apex Credit Repair Co. RT 128.[2] Plaintiff did not have a business licence to operate Apex Credit Repair. RT 31. Plaintiff is unable to identify the name of any customer of Apex Credit Repair. RT 66. There is no evidence that any of the seven customers Plaintiff believes must have used Defendant's product instead of his product had a signed contact with Plaintiff. RT 222.

Plaintiff earned no income from his work as a foreclosure consultant in 2007 or 2008. RT 140-141. As Apex Credit Repair, Plaintiff performed his work on behalf of his customers free of charge. RT 144-145; RT:134:17-20 ("Never charged an dime for it. Just did it to help people for free."); RT: 17-20. At his deposition, Plaintiff testified that within the preceding 12 months, he had not received any money from business, profession or any form of self-employment. RT 106. He further testified that he did not receive money from any source during the 2007-2008 time period. In addition, Plaintiff did not file any tax returns for any of the years 2005-2008. RT 148-149. Plaintiff has not claimed any business losses from his credit repair business on any application or other official form. RT 160. Plaintiff was unemployed in January 2008. RT 106:11-15.

It is undisputed that Defendant did not offer services as a foreclosure consultant. Stearns Decl., ¶ 8. At no time did Defendants offer any service to review customers' credit reports to determine if such reports contained erroneous information. *Id.* ¶ 10. Defendant never offered a

---

[2]Plaintiff testified at his deposition that "all that information was on the hard drive – on the card that you [Timothy Stearns] destroyed. I don't have that information available to me anymore. This is something that happened years ago [in 2006 or 2007]." RT 128:19-24.

service whereby he or his business, Tradeline Solutions, would contact credit reporting agencies on behalf of customers to request the correction of erroneous information. *Id*. ¶ 11. Nor did Defendants work on behalf of customers to contest information in customers' credit reports. *Id.*

### C. Motion for summary judgment

#### 1. Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, " Celotex requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc*., 411 U.S. 242, 255(1986).

#### 2. Application of Summary Judgment Standard

##### a. *The Lanham Act False Advertising Claim*

Plaintiff's only federal claim alleges a violation of § 1125(a) of the Lanham Act, which provides in pertinent part:

> (1) Any person who, on or in connection with any goods ..., uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of

6

origin, false or misleading description of fact, or false or misleading representation of fact, which-

\* \* \*

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

\* \* \*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Claims brought pursuant to this section of the Lanham Act are generally known as "false advertising" or "trade libel" claims. *Zenith Elec. Corp. v. Exzec Touchsystems, Inc.*, 182 F.3d 1340, 1347-48 (Fed.Cir. 1999). In order to survive a motion for summary judgment on a false advertising claim under the Lanham Act, there must be evidence that: (1) Defendants made a false or misleading statement of fact in commercial advertising or promotion about the their own or another's goods or services; (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that Defendant caused the statement to enter interstate commerce; and (5) that the statement results in actual or probable injury to Plaintiff. *Id.* at 1348; *see also*, *Cook, Perkiss and Leihe, Inc. v. Northern California Collection Service, Inc*. 911 F.2d 242, 244 (9th Cir. 1990).

In order to withstand a summary judgment motion, there must also be evidence that the injury was "competitive" *i.e.*, that the plaintiff's ability to compete with the defendant was actually harmed. *See Halicki v. United Artists Communications Inc.,* 812 F.2d 1213 (9th Cir. 1987) (holding that § 43(a) of the Lanham Act is confined to remedy "injur[ies] to a competitor.")*; Barrus v. Sylvania,* 55 F.3d 468, 470 (9th Cir. 1995) (under § 1125(a)(1)(B), false advertising must be "harmful to the plaintiff's ability to compete with the defendant."); *but see, Waits v. Frito Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992), *cert denied*, 506 U.S. 1080 (1993) (clarifying the rule enunciated in *Halicki*, stating that in a false advertising case the plaintiff must allege "a discernible competitive injury" and holding that in a "false association" case under the Lanham Act, there is no need to

7

allege competitive injury because in such a case, the trademark holder is attempting to "control [] the commercial exploitation of his or her identify[,]" and not necessarily prevent unfair competition.").

The Court concludes that the present case, in which Plaintiff alleges that Defendant's advertising resulted in the loss of customers to Plaintiff, falls into the category of a traditional false advertising or unfair competition claim. This is the type of harm that section 43(a) of the Lanham Act was intended to remedy. In order to prevail at the summary judgment stage, however, Plaintiff must show evidence of "a discernibly competitive injury." *Waits*, *supra* at 1109.

In the present case, Defendant argues that there is no evidence of any competitive injury to Plaintiff. The Court agrees. Specifically, Defendant argues that: 1) Plaintiff and Defendant were not in competition with one another in that they provided entirely different products and services to their customers; and 2) Plaintiff has not suffered any damages or injury as a result of Defendants' actions. With respect to the first argument, Defendant has proffered his own declaration in which he declares under penalty of perjury that he and Plaintiff were not in the same type of business. Defendant declares that he and Plaintiff did not market the same type of product, nor did they have the same target audience. Stearns Decl., ¶¶ 7-8. Mr. Stearns explains that Tradeline Solutions (Quantum Holdings, Inc. dba Tradeline Solutions) offered one product until December 2007 – "credit piggybacking." Stearns Decl., ¶ 1. According to Defendant, "credit piggybacking" involved adding authorized users onto existing credit accounts with good credit histories. *Id*. According to Defendant, who cites to a Money magazine article, "credit piggybacking" is "one of the best ways to repair or improve credit." *Id*. In 2008, Tradeline Solutions came out with a new product known as "seasoned primary accounts." *Id.* at ¶ 3. These two products are the only products that were offered by Defendant and his business Tradeline Solutions. *Id.* It was the later product – the seasoned primary accounts – that is the subject of Plaintiff's complaint in this matter. *Id.*

The undisputed evidence shows that Tradeline Solutions did not offer its customers foreclosure consulting, nor did Tradeline Solutions assist people by reviewing loan default papers, reviewing customers' credit reports to determine if such reports contained erroneous information, or

8

contacting credit bureaus to help correct customers' credit histories. Stearns Decl., ¶¶ 8-11. Mr. Stearns states that neither he nor his business, Tradeline Solutions, worked on behalf of customers in order to correct or contest information on customers' credit reports. *Id.* at ¶ 11. Mr. Stearns further declares that neither he nor Tradeline Solutions offered any service to find mortgage lenders (or lenders of any kind) for their customers. *Id.* ¶ 13. Neither he nor Tradeline Solutions ever offered to send written requests to lenders on behalf of mortgage debtors who were in foreclosure. *Id*. at ¶ 15. These are the types of services that Plaintiff testified he offered to his customers of "Apex Credit Repair" business. SSUF Nos. 7-11 (citing RT 291-293).

Based upon the foregoing undisputed facts, the Court concludes that Plaintiff and Defendant were not in competition with each another. Defendant's business was limited to providing credit piggybacking, a product and service that Plaintiff did not provide. SSUF 1-3 (citing Rt 147; 194, 297-98). At his deposition, Plaintiff admitted that his services were different than those provided by Defendant. He testified in response to questions on this subject: "Yes. Correct. I did not offer a product – I did not offer – I did not offer the product that Tradeline Solutions offered what I'm complaining about in my complaint." RT 147:14-17. Plaintiff explained that in his complaint, he is complaining about Defendant's "tradelines" which he described as taking "the credit from that pre-existing trade line and attach it to the incoming person's credit, which would immediately boost that person's credit." *Id.* 147-148. Plaintiff admitted that he did not offer any product that would add people as authorized users onto accounts. *Id.* at 148:8-11. He also testified that the "seasoned accounts" service offered by Tradeline Solutions was "a totally different service" than what he was providing his customers. *Id.* at 12-17.

In response, Plaintiff does not address Defendant's arguments or make any attempt to refute his evidence. Rather, he argues generally that his memory card was destroyed by counsel for Defendant and that his evidence was on this memory card that he alleges was sitting on top of his laptop computer and is now destroyed. The Court will address Plaintiff's spoliation arguments separately below. The Court notes, however, that it will be difficult, if not impossible, for Plaintiff

9

to point to evidence on his laptop could contradict these fact in light of his deposition testimony. For example, at his deposition, Mr. Brosnan admitted that he did not: 1) provide any credit "piggybacking" services to anyone; and 2) he admitted that the services he provided as "Apex Credit Repair" were different from those products that were offered by Defendant. *See* Stearns Decl., ¶ 6; RT 147:12-17. Mr. Brosnan claims that he had seven customers for whom he acted as a foreclosure consultant whose business he lost to Defendant between December 2007 and January 2008. At his deposition, Plaintiff detailed the services he planned to offer those customers. Mr. Stearns states in his declaration that "neither Tradeline Solutions nor I agreed to provide any such serves to our customers." Stearns Decl., ¶7. Mr. Stearns also declares that he has "never been a foreclosure consultant." *Id.* at ¶ 8. Accordingly, even if the names of the customers were contained on Mr. Brosnan's hard drive that was allegedly destroyed by Defendant, the undisputed evidence remains that Plaintiff and Defendant were not competitors – they did not offer the same products or services.

Competitors are "persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival." *Fuller Bros., Inc. v. Int'l. Marketing, Inc.*, 870 F.Supp. 299, 303 (D.Or. 1994) (quoting Black's Law Dictionary, 5th ed., p. 257). Absent a "similarity in endeavors" Plaintiff and Defendant are not competitors in the "traditional sense." *Id.; see also Waits*, 978 F.2d at 1110. The Court concludes that the undisputed facts show that Plaintiff and Defendant were not in competition with one another sufficient for the Lanham Act claim to proceed to trial.

In addition, Defendant argues that Plaintiff has not suffered any damage as a result of the alleged competition. The Court agrees. The federal Lanham Act claim fails due to Plaintiff's failure to put forth evidence of any injury or damage. Specifically, Plaintiff had no income from his business in 2007 or 2008. *See* SSUF Nos. 23-30 (citing RT 106, 107, 134, 140-41, 144-45, 148-49). 160. Plaintiff has also admitted (through his failure to respond to Defendant's request for admissions) that Defendant's actions did not cause him any damage. Admitted Fact No. 9. In addition, Plaintiff's own testimony at his deposition failed to provide any evidence of injury, given

10

his testimony that his services were provided to customers "free of charge." Accordingly, the Court finds no credible evidence of damages as a result of Defendant's allegedly "competitive" actions. The Defendant's motion for summary judgment on the Lanham Act claim is GRANTED.

### b. *Plaintiff's Fraud Claim*

Plaintiff's fraud claim consists of the allegation that Defendants knew that their product "Rapid Rescore" was illegal. Compl. ¶ 87. Plaintiff alleges in his Fourth Amended Complaint that Defendants knew that their tradelines were illegal and misrepresented that fact to their customers. *Id.* ¶ 85. In addition, Plaintiff alleges in his Complaint that he was harmed by these misrepresentations because customers are "siphoned away from [from Plaintiff] by the illegal services offered by defendants." *Id.* ¶ 95. Specifically, Plaintiff alleges in his Complaint that on January 23, 2008, an employee of Defendants, Richards, left a voicemail for a person named Michael Carlton. *Id.* ¶86. Plaintiff alleges that this voicemail was fraudulent in that it misrepresented the true unlawful nature of Defendants' product, Rapid Rescore. *Id.* ¶87. Plaintiff, again cites to his Complaint rather than provide evidence to support these allegations.

In order to survive a motion for summary judgment, Plaintiff must come forward with some evidence that could support the following elements of his fraud claim: 1) intentional misrepresentation; 2) knowledge by the person making the representation that the statement was not true; 3) intent to defraud on the fact misrepresented; 4) justifiable reliance by the plaintiff on the misrepresentation; and 4) damages. *Small v. Fritz Companies, Inc*., 30 Cal.4th 167, 173 (2003). In the present case, the undisputed facts establish that Plaintiff cannot prevail on his fraud claim. First, there is no evidence of a misrepresentation. Second, there is no evidence in the record, (even assuming that the December 2007 press release was false), that Defendants knew the statements in the press release were not true.[3] Moreover, by his own admissions, Plaintiff cannot prove any

---

[3] Again, these allegations are not supported by evidence. As with the preceding claim, Plaintiff provides no evidence in opposition to Defendants' motion for summary judgment. Rather, he argues generally, without specifying particular pieces of evidence or documents, that his evidence has been destroyed. As explained in greater detail below, the Court finds, however, that it is not necessary to address Plaintiff's spoliation arguments.

11

damages as a result of Defendants' 2007 press release. Plaintiff has admitted that he had no income from his business as Apex Credit Repair in 2007 and 2008, and has testified that he performed his work for his unnamed customers free of charge (even assuming for the purposes of this motion that these seven customers existed).[4] The Court therefore concludes, as a matter of law, that even drawing all inferences in a light most favorable to Plaintiff, there is no damage to Plaintiff as a result of his customers opting to use Defendants' services instead because these customers never paid Plaintiff in the first place. Because there is no evidence of a misrepresentation or of damage to Plaintiff, Defendants' Motion for Summary Judgment on the fraud claim is GRANTED.

      *c.*     *Plaintiff's Second and Third Claims, Business and Professions Code § § 17200 & 17500*

Plaintiff's second and third claims for relief based upon California Business and Professions Code § 17200 and 17500 fail for similar reasons. First, there is no evidence that Defendant's and Plaintiff's credit repair businesses were competitors. Second, as explained previously, there is no evidence of injury or restitution owed to Plaintiff.

Sections 17200 and 17500, *et seq.*, prohibit "any unlawful, unfair or fraudulent business act or practice. Section 17200 is derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." *Lomboy v. SCME Mortgage Bankers*, 2009 WL 1457738, *7 (N.D. Cal., May 26, 2009) (Conti, J.). On summary judgment, Plaintiff must put forth evidence to support these statutory violations (or to refute the evidence proffered by Defendant).

Moreover, and especially pertinent here, in order to have standing on a claim for unfair competition under Cal. Business and Professions Code §17200, Plaintiff must put forth evidence

---

[4]The Court also takes judicial notice of the request to proceed *in forma pauperis* that was filed in the Central District on January 9, 2008, in the matter *John Brosnan v. City of Los Angeles*, No. 08-00130 in which Plaintiff declared under penalty of perjury that he was at that time, unemployed and had not within the preceding 12 months received any money from any business, profession or self-employment or any other income. Declaration of Timothy Stearns, filed in support of Defendant's Motion for Summary Judgment, at 11.

1 supporting a finding that he "suffered injury in fact and has lost money or property as a result of
2 unfair competition." Cal. Bus. & Prof. Code § 17204.[5] The law permits injunctive relief and
3 restitution, but not damages. *See Bank of the West v. Superior Ct.,* 2 Cal.4th 1254, 1266 (1992).
4 Based upon the undisputed facts, including the admissions of Plaintiff, the Court concludes that
5 there is no evidence to support a finding that Plaintiff has standing to pursue these claims. There is
6 no evidence in the record before this Court of damage to Plaintiff as a result of Defendant's actions.
7 Admitted Fact No. 9. Plaintiff admits that he had no income from his consumer credit repair
8 business in 2007, 2008 or 2009. As with the fraud claim, there is no credible evidence in the record
9 that Plaintiff's seven customers paid or would have paid Plaintiff for his services. As a result, the
10 Court concludes as a matter of law, that there was no injury to Plaintiff as a result of Defendants'
11 alleged misrepresentations and/or false claims. There is no evidence that could support a finding of
12 liability under either section of the California Business and Professions Code.

13 These claims fails for another reason as well. In opposition to Defendant's motion for
14 summary judgment, Plaintiff has not provided evidence that Defendant's statements were actually
15 false. Plaintiff's claim that the statements were false or misleading, without evidence to support his
16 contention, is insufficient. *See e.g.*, *In re Century 21-RE/MAX Real Estate Advertising Claims*
17 *Litigation*, 882 F.Supp. 915, 922-23 (C.D.Cal.1994) (granting summary judgment for defendant on a
18 Lanham Act claim because Century 21 provided no evidence of the effect Re/Max ads had on
19 consumers).

---

[5]Previously, the UCL permitted "any person" whether injured or not to maintain a claim for unfair competition. Proposition 64, passed in California in 2004, however, changed the standing requirements for this claim. After November 2004, a plaintiff must establish injury. At least one court has interpreted the voters' intent with respect to the "lost money or property" requirement to be consistent with the requirements for seeking restitution under section 17203. *See e.g., Walker v. USAA Casualty Ins. Co.*, 474 F.Supp.2d 1168 (E.D. Cal. 2007) (England, J.) ("In order to claim a loss of money or property for section 17203 purposes, a plaintiff must have either prior possession or a vested legal interest in the money or property lost."). *But see, G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 WL 4350907 (Dec. 12, 2007, N.D. Cal. 2007) (Jenkins, M.) (declining to adopt reasoning of *Walker* and holding that plaintiffs in that case had standing to pursue injunctive relief for injury based only on a showing of lost income). Under either analysis above, Plaintiff's claim here fails. There is no evidence of a vested interest in money or property nor is there evidence of lost income.

13

1  Finally, there is no basis for injunctive relief because Plaintiff has put forth no evidence that
2  the harm will continue given that Defendant is no longer in the business of selling tradelines. This
3  claim is likely moot given that Defendant's business is no longer in existence. The Defendants'
4  Motion for Summary Judgment on these claims is GRANTED.

### C. Plaintiff's Motion for Spoliation of Evidence

#### 1. Legal Standard for Spoliation of Evidence

The Court has inherent powers to arising out of " 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)); *see also Toste v. Lewis Controls, Inc*., 1996 WL 101189, *2 (N.D.Cal. Feb. 27, 1996). In this regard, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Federal courts also have authority to sanction a party "who fails to obey an order to provide or permit discovery" under Federal Rule of Civil Procedure 37(b)(2)(A). *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006) (internal quotation marks omitted). The Court need not find bad faith by the offending party before issuing sanctions for destruction of evidence; willfulness or fault can suffice. *Id.*; *Unigard*, 982 F.2d at 368 n. 2 (*citing Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988)). Sanctions may be appropriate when a party knew or should have known that the destroyed evidence was potentially relevant to litigation. *Glover*, 6 F.3d at 1329 ("Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation.") (internal quotation marks omitted).

There are three types of sanctions for destruction of evidence. First, the court can instruct the jury that it may infer that evidence made unavailable by a party was unfavorable to that party. *See, e.g., id.; Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991); *Cedars-Sinai Med. Ctr. v. Superior Court of Los Angeles*, 18 Cal.4th 1, 11-12, 74 Cal.Rptr.2d 248, 954 P.2d 511 (1998).

14

1 Second, the court may exclude witness testimony based on the evidence that was destroyed. *See,*
2 *e.g., Unigard*, 982 F.2d at 368-69; *BTO Logging Inc. v. Deere & Co.*, 174 F.R.D. 690, 692-93
3 (D.Or.1997). The third (and most drastic) sanction is to dismiss the claim of the party responsible
4 for the spoliation. *See, e.g., Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir.1995);
5 *see also Chambers*, 501 U.S. at 45, 111 S.Ct. 2123 (noting that "outright dismissal ... is a
6 particularly severe sanction, yet is within the court's discretion"); *Cedars-Sinai Med. Ctr.*, 18
7 Cal.4th at 12, 74 Cal.Rptr.2d 248, 954 P.2d 511.

In determining whether and what type of sanctions to issue, the Third Circuit has explained that courts should consider three factors: 1) "the degree of fault of the party who altered or destroyed the evidence," 2) "the degree of prejudice suffered by the opposing party," and 3) "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Schmid v. Milwaukee,* 13 F.3d 76, 79 (3rd Cir.1994); *see also Toste*, 1996 WL 101189 at *2 ("[A] party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed.").

### 2. **Application of Legal Standard**

In response to the summary judgment motion, Plaintiff does not argue any material facts or evidence in support of his argument that his case should proceed to trial. Rather, in an unsworn statement (his opposition brief) he argues that his evidence was destroyed by the actions of Defendant's counsel at a deposition. Specifically, he alleges that at his deposition on September 14, 2009, counsel for Defendant, Timothy Stearns, slammed Plaintiff's laptop shut and crushed a memory card "containing among other things; digital files related to this case." Opp. at 2.

Plaintiff's spoliation argument turns on two requirements. First, that evidence was actually destroyed, and second, that its destruction was prejudicial. Plaintiff fails to carry his burden on these two requirements. Plaintiff makes no showing that the specific evidence lost would in any way aid him in this case, and therefore, that its loss was prejudicial. Plaintiff has failed to identify what specific evidence was destroyed. The failure to identify with any specificity the evidence destroyed is particularly problematic here: Plaintiff acknowledges that not all of the evidence relevant to this

15

case was destroyed: " BROSNAN has been able to locate some documents that were in other locations and has provided them to Tim Stearns." Opp. at 3.

Second, Plaintiff's claim that evidence was destroyed is undermined by the declaration of the court reporter, attached to Plaintiff's opposition brief. The court reporter declares under penalty of perjury that she has no memory of any laptop being slammed closed, nor of any destruction of evidence at the deposition on September 14, 2009. Opp., Exh. 4 (Declaration of Joanie Y. Yurakami, certified court reporter).[6] Indeed, the court reporter does not recall any discussion about a damaged laptop or a damaged "micro card, etc." *Id.* Moreover, the Court is highly skeptical of Plaintiff's spoliation claim, given the history of Plaintiff's refusal to provide requested discovery to Defendant and the above evidence, *i.e.*, the declaration of a witness to the event, the court reporter. Defendant made repeated requests for answers to requests for admissions, which were promised but never produced. At the first deposition of Plaintiff in September 2009, Plaintiff simply stated that he did not have the documents with him. Now, he claims that evidence necessary to overcome Defendant's motion was on his memory card and has been destroyed (yet offers no explanation as to why it is not also contained on his hard drive or in another form). Finally, Plaintiff's claims are not supported by any declaration or other evidence. Plaintiff provides no photographs or other evidence of the supposedly destroyed memory device. He provides no evidence of any effort to recover any of the digital files supposedly contained on the device. The Court finds that Plaintiff has failed to put forth sufficient evidence that any spoliation occurred. Even if the Court were to agree that Plaintiff's laptop and/or memory had been damaged, Plaintiff has failed to identify what evidence

---

[6] At the hearing in this matter, Plaintiff requested an order directing counsel for the Defendant to produce a complete videotape of his September 14, 2009 deposition. Plaintiff claims that Mr. Stearns only provided him with the portion of the video that includes the incident in which his laptop was "slammed" closed. The Court DENIES this request on two grounds. First, Plaintiff has made no showing that the video provided to him is incomplete. In fact, counsel for the Defendant has submitted a declaration in which he declares that although he thought the video camera was recording the entire deposition, it was not. *See* Declaration of Timothy Stearns at ¶17 ("I provided the entire video. On September 14, 2009, I thought the video camera was recording Mr. Brosnan's deposition, when in fact, I did not have it recording.") Therefore, no "complete" videotape of the deposition exists. Second, Plaintiff makes no showing that the allegedly missing portion of the videotape is relevant to his spoliation claim or to summary judgment.

16

was destroyed and how it is relevant or necessary to his prosecution of this case. The Court therefore DENIES what it deems as Plaintiff's Motion for Sanctions Based on Spoliation of Evidence.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. What the Court construes as Plaintiff's motion for spoliation of evidence is DENIED. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: January 15, 2010

JOSEPH C. SPERO
United States Magistrate Judge

17